Our next case for today is Boynton v. Hunter, appeal number 23-1830. Okay, Mr. Strong, you can start whenever you're ready. Great. May it please the court. I'm Tom Strong for Michael Boynton. Excuse me. During the 1985 crisis in Beirut, the Marines deployed Mr. Boynton and his co-pilot and friend, known as Zippy, to the USS Iwo Jima. In pitch black, Zippy and Michael were flying an attack helicopter. During a difficult maneuver with four other helicopters, theirs stalled and crashed in the Indian Ocean. The cabin filled with water and gas and began to sink. Though Michael surfaced, his friend drowned below. Fast forward to now, when the Veterans Court and the board have overlooked CFR 4.126 and USC 7104A, foundational rules that require the board to consider all of the evidence of record, regardless of when the evidence was submitted. In 2018, Mr. Boynton testified to the board he became physical with his wife and had to take seven or eight Xanax to keep from hurting his boss. He also told the board and two private examiners that PTSD led him to think about killing himself all the time. The VA found that these symptoms supported a 100% rating for PTSD, but only for 2018 to 2020. The board and Veterans Court were oddly silent about this evidence that had supported a 100% rating. They chose to limit its application to 2018 to 2020, creating an evidentiary blackout period. But this limitation led the board and the Veterans Court to violate rules that require the board to consider all of the evidence of record. A requirement that exists even before analyzing factors like relevance and favorability to determine whether a discussion of the evidence is required. We can tell the board overlooked these rules and then excluded evidence from the blackout period for several reasons. First, the board said in its opening pages that this period was not before the board. The board uses this phrase in this and other contexts to signal that it's excluding evidence from any consideration. At page 14 of the appendix, the board defines appeal period. Counsel, I read the Veterans Court's decision to be saying that they don't agree with you on that point. They say there's a presumption that the board considered all the evidence and we don't see enough here to conclude otherwise. So why isn't that a legitimate analysis? So what happened in this case is, so at page 14 of the appendix, the board defines appeal period. And this is counter to what the Veterans Court is saying in its decision. It defines appeal period and that definition excludes the blackout period. Okay, just to interrupt, but that is the correct appeal period, right? That is the period for which your client was challenging his writing. So what the Veterans Court did is that it analyzed the period before this blackout period and the Veterans Court analyzed after the blackout period. So there's this hole in the Veterans Court's analysis because it didn't apply these two provisions of law that require the Veterans Court to have something to attach the presumption to. Because it says that the board says it's not before the board and then the court says that this is a period that's not an issue. I'm just trying to point out, it was not an issue because you had 100% rating during that period. We can argue over, and we may or may not have jurisdiction, we can argue over what the implications of that statement are, but it is correct that there was no appeal with respect to that January 18 to June 2020 period. The evidence during that period is absolutely before the board and it's absolutely before the Veterans Court. And the reason it's before the board and it's before the Veterans Court is because of 7104A, which says that all the evidence and material of record are before the So what the board did is it basically created an evidentiary record. It split it into three periods. But you're not quibbling with 100% rating, right? We're not. We're talking about the 100% rating. Yes, we like the 100% rating. We're talking about these periods where it's less than 100%. So the period where it's 70%, which is post-June 2020, and then the period that is pre-January 2018. That's really what we're focusing on are these two other periods. We can tell that the board overlooked these rules and excluded evidence from the Bat-Cow period. This is really one of the key points that we wanted to make, was that at page 14 of the appendix, the board defines the period on appeal to exclude the blackout period. Just so I can follow, when you say blackout period, what do you mean by that? I'm talking about this period where it didn't consider the evidence. Okay. That's what I mean. Between 2018 and 2020, they're saying we're not going to consider the evidence in that period as well. The best and clearest example of excluding evidence from the blackout period was that Mr. Boynton submitted a March 2016 private exam, but he submitted it about a week into the blackout period. So the board ignored the March 2016 exam, even though it bore on the period before the blackout period. I thought we were concerned with an April 2018 exam. There's a March 2016 that you think was overlooked? It was submitted in January 2018. It was a March 2016 exam, but because it was submitted in this- Your briefing really focuses on the April 2018 exam, right? It does focus on that. That's true. But this piece of evidence, we're saying that the evidence from 2018, so there's testimony before the board that wasn't considered. There's also this- Actually, that's mentioned on page A14. A14 says in April 2018, the veteran testified. Is that what you're talking about? It says that the veteran testified before, but it's giving a historical perspective. When it's talking about, it's giving it in a procedural context. It's not weighing the evidence. In either of these places where we talk about the April 2018- What do you do about the fact that the board says it has to assess the credibility and weight of all the evidence and seems to recognize that it needs to consider all the evidence? We got the veterans court saying there's a presumption that there was consideration of the evidence, and you're saying that there's a determination that they didn't consider the evidence just because it's not mentioned. But there's nothing. What do you have, if anything, that says we expressly are not considering this evidence? Several times, and the DOJ points this out in the DOJ briefing. It says that the board says, we've considered the evidence for the entire appeal period. But if you look at page 14 of the appendix, it defines the appeal period to exclude these blackout dates. It says that it's not before the board. What sentence in particular are you referring to? At the very bottom of appendix page 14, you can see that it says it's not before the board, and it's defining the appeal period there. Then later on, five pages later, it says- It doesn't say we're not going to consider the evidence that was during that time period. We've already talked about this. I think it's just telling you, it's just saying, why isn't it reasonable to read this as simply saying that nobody's appealing this period? In the board decision and in the veterans court decision, his key evidence, his 100% PTSD evidence, there's evidence of harm towards other people. That only takes place in the 100% rating. It doesn't discuss that evidence. It's really suspicious that it doesn't talk about the pieces of evidence that supported 100% rating, because it's only applying it to pre-January 2018 and post-2020. It's saying that we're going to basically make the evidentiary record, split it into three pieces for each of the stage rating periods. It's not looking at the other evidence from the other periods. It's siloing the evidence time based on the time that it was submitted to the VA. What if I don't agree with you that that's what the board did? Then where's your appeal? Are you raising a legal issue or is it just a question of fact because you are complaining about the weight that the board gave to that evidence? The veterans court still made a mistake. We can say that if you assume that the board considered all of the evidence, we can still analyze the veterans court because we believe that the veterans court made the same mistake. That it said that this was a period that was not an issue. It says that in page two of the veterans court's decision. So is that where, because you know we can only review in this context the legal decision. So can you show me where on page two you see the veterans court making a legal decision that you is incorrect? So on page two of the veterans court's decision, it says that Mr. Boynton cites, it identifies evidence. Can you show me where on page two you are? It's at the bottom of page two, second sentence up from the bottom. It's the part of the decision where it says that it's the period not an issue. And he says that Mr. Boynton identifies evidence from a period not, no I'm sorry, it's the third sentence up. He also identifies evidence from 2018 which pertains to a period not at issue. That is the period where he had all his most important evidence is. But first of all, that period is not at issue in this appeal. But second of all, they don't say therefore the board is free to ignore that evidence. Do they? No. But what the veterans court has done is it's treated it as per se irrelevant. It's saying that because it's from this period, it's treating the evidence itself as irrelevant. And so it never ends up discussing all of the testimony that he gave to the board about his PTSD. It is the most salient of all the evidence. At the bottom of two, carrying on to three, I'm sure you know the veterans court goes on to say the board did not mention certain pieces of evidence, but that is not enough to overcome the presumption that the board reviewed and considered that evidence. But that analysis only pertains to the period in seven, to the evidence, excuse me, to the evidence in the 70% rating period and the 70% rating. Why doesn't that what they've done is they've said it's not at issue. So by saying the evidence is not, by not considering that evidence at all, it doesn't apply the presumption. So can I ask you something? It says there's a sentence that wraps pages appendix two and three and it says, oh, the board did not mention three pieces of evidence in this case. That is not enough to overcome the presumption. Now, I read this as one of those three pieces of evidence because above in the first sentence, it identifies what the evidence is. And one of them is the 2018 exam that you're talking about. So why isn't this reference to three pieces of evidence, including evidence from the period, not at issue? I don't know why the veterans court wasn't more explicit about what evidence. I'm asking you, to me, it seems explicit. Why is it not explicit? On the April 2018, but there was also another reason that the board didn't consider that exam. And it was found two years before the board's decision. In this case, right now, that the veterans court reviewed, it had found that inadequate. So it may not have reviewed that because in September 2018, it had been found to be inadequate. So that could be a reason why. Okay. Should we hear from the government now? Yes. You left one of your papers up there, in case you weren't looking for it. May it please the court. Mr. Boynton's appeal should be dismissed or alternatively, the veterans court's decision should be affirmed. I'll begin with jurisdiction. So, and I'll start by directing the court's attention to appendix four, appendix three and four, where the veterans court sums up its analysis. And what the veterans court says is, Mr., in short, a total disability rating contemplates extreme symptoms. And this is entirely consistent with this court's case law in Vasquez, Claudia, which the veterans court cites. And the veterans court says, Mr. Boynton identifies a handful of evidence and symptoms that went unaddressed by the board, but he identifies nothing that relates to the 100% rating level. And the court can find no symptoms like those listed in the 100% rating anywhere in Mr. Boynton's file. So that shows that the veterans court is looking both at the arguments Mr. Boynton made and looking at the record itself and deciding based on this holistic review that the board's fact finding on the 100% rating was supported by the record. So that's a factual conclusion that this court doesn't possess jurisdiction to review. And in our view, that would be dispositive. Why doesn't that last sentence show that maybe, you know, it seems inconsistent with some evidence that might have been relied on to show 100% rating during the not appealed period or what's being referred to as a blackout period. I'm just wondering, why doesn't that sentence, and the court can find no symptoms like those listed in the 100% rating anywhere in Mr. Boynton's file, why doesn't that suggest that maybe they did not consider particular evidence? Well, so this is another important point. So the record includes not just a board decision from 2021, but also an earlier board decision from 2018. And that earlier board decision, which didn't come up in Mr. Boynton's opening argument, analyzes this evidence in a much higher level of detail than the argument suggested. So if you look at the record as a whole, what it shows is that, yes, Mr. Boynton did get a friendly 100% rating for the 2018 to 2020 period. At the same time, the board found in 2018 that the basis for that rating, the 2018 private medical exam, wasn't detailed enough to show what the symptoms were that would support the 100% rating. So it's true that the private medical examiner did check a box that said total occupational and social impairment, but the board said in 2018 there's not enough for us to decide, based on this exam, what those symptoms are, which is why there was a remand, which is why the board looked at the issue again in 2020. So I think the Veterans Court's analysis here is consistent with the record evidence. And it's not clear, to me anyway, from Mr. Boynton's briefing, which particular symptoms would be comparable in severity to those set forth in the 100% rating, which, as the Veterans Court notes, are very extreme symptoms like delusions, hallucinations, spatial disorientation. So if you look at it at the symptom-based level, it's just not obvious. And that's what the board said in 2018. That's what the board said in 2021. And then there's the broader question of the touchstone of this analysis. And I'm moving now from jurisdiction to the merits to answer Judge Soule's question. But the touchstone of this analysis is total social and occupational impairment. And Mr. Boynton, to my knowledge, was working through the entire relevant period. He seems to have had a quite stressful, demanding job working for the federal government. He seems to have maintained a stable family relationship, albeit strained, as the board acknowledges. So these are all factors that are inconsistent with the idea that 100% rating was warranted here. So the Veterans Court's analysis is consistent with a reasonable review of the record, which is because the Veterans Court has already done this analysis. That's one reason this court doesn't have jurisdiction. But if the court decides it does have jurisdiction, the fact that the Veterans Court's analysis is reasonable and is supported by a lot of analysis from the board, including the 2018 board opinion, which I don't think we can exclude from this analysis. Because in 2021, the board is writing against the backdrop of that earlier decision. The 2018 board had remanded because it didn't find the 2018 private medical exam to be adequate to support 100% rating. So the board is starting with that presumption and then writing, picking up the ball from there and running forward with the other evidence. But to require the 2021 board to repeat everything that the 2018 board had said just would be unnecessary and not a requirement found in the law. One of the arguments in Mr. Boynton's brief, I think it happens to be the blue brief at 10, but I'll take you to it. He says it's illogical to determine that the symptoms that led to a 100% rating in a particular month, the blackout period, were irrelevant to a period only a few months later, especially when I guess there's evidence, unfortunately, that his PTSD condition was expected to worsen. So he's saying it's illogical to treat as irrelevant evidence from the middle 100% period, at least when you're looking at the rating in the later period. Do you how does that impact this appeal? So a couple points. The first point is I don't think that's what happened here. Our position in terms of what the board should do, and I think this is consistent with what the board said and what the Veterans Court did, the board should look at for the 2020 forward rating period. The board should start with this 2020 exam, which is a very probative piece of evidence about that, but it should look at it in the context of the whole record. We would agree with that as a general legal proposition. And the board, again, says that in language that the court drew Mr. Boynton's counsel's attention to. So there's no per se categorical exclusion of evidence that's contemplated in what the board's doing here, what the Veterans Court's doing here. What there should be is a fact finding done by the board based on that evidence, and an explanation that the Veterans Court can review for why the board did what it did, and then there's a question of what this court can review based on what the Veterans Court did. So one, the board should look at the record as a whole. Two, there should be some reasonable basis for what the board did that's explained, and there are going to be questions on what this court's jurisdiction review that. But just looking at what the board explained here, and again, we would focus both on the 2021 board decision and the 2018 board decision, and say it's pretty clear why the board did what it did. That is, that the 2018 board decision found inadequate for rating purposes, for the purposes of 100% rating, the private medical examiner opinion, because it just wasn't adequately explained. You may have just said this or I missed it, but what is your number one best argument to rebut what Appellant's counsel said, that the blackout period was not considered? What's your best argument? It would be a combination, sure, so it would be a combination of the board saying, of the board in 2021 referencing the 2018 medical examiner report, so that's at appendix 20, and then that refers back to the earlier board finding where it details its analysis. I'm not asking you to go in and pour through that and recite it, but you're so prepared. What does that say at appendix 20? Why is that such a strong point to convince us that the blackout period was in fact considered? Well, again, I think what appendix 20 has to be read in light of appendix 385, so I'm going to read them together. So appendix 20 says, he submitted a private examination from April 2018, suggesting that his symptoms were worse. However, the board found this examination inadequate for rating purposes. Accordingly, the board remanded for a new examination, and then that takes us to appendix 385 and 386, which is where the board says, the 2018 board says, the board acknowledges the 2018 DBQ that was submitted from a private examiner, which indicates that the veteran has total occupational and social impairment, but then the board goes into the second appendix site, I'm sorry. Sure, 385 to 386. Thank you. And the court will see that the board says there just isn't enough explanation, there's some unexplained discrepancies here in the 2018 exam. So I would pair that fact finding by the board with the veterans court's statement at appendix I believe it's three and four, where the veterans court says, we have looked ourselves at everything. We have looked at the symptoms identified by Mr. Boynton, and the veterans court would be allowed to just look at the issues raised by Mr. Boynton in his brief, because that's generally what appellate courts do, but the veterans courts say, we didn't stop there, we can find no symptoms like those in the 100% rating anywhere in Mr. Boynton's file. So there's no indication that it thinks a certain period of time is off limits there. Happy to address any other questions the court has. If none, we ask the court dismiss or alternatively affirm. Thank you. Thank you counsel. Thank you. Mr. Strong, I'll give you an additional two minutes rebuttal if you need it. Thank you. So I'll just make two points. The symptoms that the veteran that led to the PTSD, the 100% rating, it was the persistent danger of self-harm or harm to others. And the evidence that supported that was his discussion of violent impulses towards his wife and his boss that took place during the blackout period. The next thing is, it's one thing to say that the period, the blackout period, is not at issue for rating purposes. It's another thing to say that it's not at issue for, in terms of evidence, for the evidence that it offers during that period. And that's the distinction that we're arguing. So the last points, before I came in today, I asked myself, what could get overlooked in this litigation that I wouldn't be able to live with if I didn't tell the court? And so I just wanted to direct its attention to the full story of the helicopter crash and Mr. Boynton's friendship with his co-pilot at Appendix 1211. Unfortunately, I mean, I understand what you're saying. We're absolutely sympathetic to Mr. Boynton, but that's not something that we consider. We don't even have jurisdiction over factual questions, right? I think that the context that it brings into it may bear, but absolutely, Your Honor, you do not have jurisdiction over those factual... Or applicable artifact. The next thing would be Appendix 515 to 519, where he gives his testimony about the violent impulses. It's unguarded, and it's historical, and it relates to the other periods. And those two things are what I would ask the court to consider. Okay. Thank you, counsel. Okay. Thank you, Your Honor. Thank you.